# EXHIBIT "A"

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# BALTIMORE DIVISION

| | |
|---|---|
| **CHARLES L. POLLARD,** | |
| Plaintiff, | |
| v. | Civil Action No.: 1:21-cv-00636-PJM |
| **GRACE MEDICAL CENTER,** *et al.* | |
| Defendants. | |

## DECLARATION OF DR. VIVIEN DORSEY

Pursuant to 28 U.S.C. § 1746, DR. VIVIEN DORSEY states under oath as follows:

1.

My name is Dr. Vivien Dorsey. I am over eighteen (18) years of age, suffer from no impairment, and am legally competent to make this Declaration.

2.

I am a Medical Doctor licensed by the State of Maryland since 1994 to practice medicine. I am board certified by the American Board of Internal Medicine. I have been practicing medicine for twenty-seven (27) years. I have been employed by Corizon Health, Inc., the contracted medical provider for the Maryland Department of Public Safety and Correctional Services, since January 2017 as a Utilization Management Medical Director ("UMMD"). In my role as the UMMD, other than for a limited number of specialized services that could be approved without my review, I review and provide approval for requests for specialized services.

3.

The matters stated in this Declaration are based on my personal knowledge, my education, training, and experience, and a review of Charles L. Pollard ("the patient") medical records. A true and correct copy of the pertinent portions of the medical record is attached to this Declaration as "Exhibit A-1," and references to the medical records contained therein follow the format of "Pollard MR" with a reference to the page number. Medical professionals reasonably rely on the facts and data maintained in the medical record in forming their opinions. I give the opinions I state within this Declaration within a reasonable degree of medical certainty.

4.

I understand that the patient has filed this lawsuit and claims that I denied him surgery for a lumbar hernia.

5.

The patient is a 62-year-old African-American male who has a history of hypertension, hyperlipidemia, Type 2 diabetes, and a lumbar hernia. Exhibit A: POLLARD MR-2, 86, 110.

6.

A lumbar hernia is a rare condition in which the tissues inside the abdomen protrude through a defect of the abdominal wall in the area near the lumbar spine. If symptomatic, treatment of lumbar hernias involves conservative treatment including pain medications. If pain medications are ineffective in addressing a symptomatic lumbar hernia, surgery can be considered.

7.

I have set forth the patient's medical care as follows. On January 31, 2019, a request for a general surgery consult for examination of the patient's lumbar hernia was approved. Ex. A-1: PP. 630-31.

8.

On March 3, 2019, a provider saw the patient in chronic care. Ex. A-1: PP. 2-5. The patient expressed no complaints related to his lumbar hernia. *Id*.

9.

On May 21, 2019, a provider saw the patient for a periodic physical exam and noted a lump on the right border of the patient's spine. Ex. A-1: PP. 9-15. The patient reported that the lump was painful and that he took Motrin for pain. *Id*.

10.

On June 19, 2019, a provider saw the patient for complaints of back pain. Ex. A-1: PP. 17-18. She referred him to a chronic care doctor. *Id*.

11.

On July 2, 2019, a provider saw the patient in chronic care. Ex. A-1: PP. 28-31. The patient denied difficulty with bowel and bladder. *Id*. The provider requested a general surgery evaluation. Ex. A-1: PP. 19-20. The request was approved. *Id*. at 634.

12.

On October 4, 2019, a provider noted that the patient had seen a doctor onsite but that the doctor recommended follow-up at the University of Maryland Medical System due to the complexity of his case and the need for potential surgery. Ex. A-1: P. 32.

13.

On October 5, 2019, a provider saw the patient in chronic care for hypertension and diabetes. Ex. A-1: PP. 40-44. The provider also requested an MRI of the patient's lumbar spine and a general surgery consultation for evaluation of the patient's lumbar hernia. *Id*. at 36-37, 46-

47. The provider noted that the patient had had a repair and mesh placement in 2010 and that he reported pain which seemed to emanate from the hernia. *Id*.

14.

On October 7, 2019, I approved the requests for a general surgery consultation and an MRI. Ex. A-1: PP. 636-41.

15.

On October 21, 2019, Dr. Stephen Kavic saw the patient for his lumbar hernia. Ex. A-1: PP. 651-52. The patient stated that the hernia was minimally symptomatic until 2013 and that he had noticed a bulge in the past six years but that the hernia had recently become more painful. The patient reported that the pain was dull, of moderate intensity, non-radiating, and associated with abdominal strain. There were no obstructions noted. The only note upon examination of Plaintiff's back is a drawing depicting a "reducible hernia." There was no tenderness or mass noted abdominally, and nothing of significance was noted other than a hernia. Dr. Kavic recommended an open operative repair of the patient's hernia and noted risks including bleeding, infection, visceral injury, and the possibility of hernia recurrence. *Id*.

16.

On December 16, 2019, a provider requested surgical repair of the patient's lumbar hernia. Ex. A-1: PP. 54-55. The provider noted that the patient had a recurrent fat herniation following a repair and placement of mesh in 2010. The provider noted that the patient had spondylosis (a general term for age-related wear and tear of the spinal discs) and degenerative disease but that the pain seemed to be emanating from his hernia. The provider also added that a surgeon recommended surgical repair of the patient's lumbar hernia. *Id*.

17.

On January 6, 2020, a provider saw the patient in chronic care. Ex. A-1: PP. 59-64. The patient denied bowel or bladder difficulties. He was also negative for back pain and did not report tenderness of the lumbar spine upon examination. *Id*.

18.

On or about January 6, 2020, I reviewed the request and Dr. Kavic's note and determined, based on the information provided, that medical necessity for surgery was not demonstrated at that time. Ex. A-1: PP. 632-33. I recommended consideration of conservative measures for pain control because the records I reviewed, including Dr. Kavic's note, did not indicate that conservative treatment to control the patient's pain had previously been attempted. It is within the standard of care to attempt to control a patient's complaints of pain to avoid the need for surgery, which carries risks as noted above. There was nothing in the record submitted to me that showed that the patient's primary care providers had tried conservative measures. Within my experience, anti-inflammatory medication is effective for a large percentage of patients to treat pain associated with hernias. I was not aware of whether the patient's providers had previously prescribed pain medication for the patient. Further, I believed conservative care was indicated at this time because the etiology of the patient's complaints of back pain (i.e. whether the patient's complaints were caused by his lumbar hernia or spondylosis) was uncertain. I believed that conservative treatment would address back pain caused by the lumbar hernia and spondylosis.

19.

After receiving my recommendation of conservative treatment, the on-site provider has the ability to appeal my recommendation or to follow the recommended course. The provider on site

did not appeal my recommendation. If the provider had appealed, the request would have been re-evaluated.

20.

Reasonable medical providers can disagree as to whether surgery was medically necessary for the patient at this time.

21.

On January 22, 2020, a provider requested Lyrica (a nerve and muscle pain medication) for the patient. Ex. A-1: PP. 69-70.

22.

On March 7, 2020, a provider increased the patient's Lyrica prescription when the patient expressed complaints inadequate pain control. Ex. A-1: PP. 79-80. The patient denied bowel and bladder difficulties at this appointment. She scheduled a follow-up in one month to evaluate the effects of the increased medication. *Id*.

23.

On April 20, 2020, a provider saw the patient, who complained of pain and numbness in the right leg. Ex. A-1: PP. 81-82. The patient reported control of his bowel and bladder. The provider ordered a cane for the patient. *Id*. I was not aware of this appointment and was not involved in personally evaluating the patient at any time.

24.

On July 16, 2020, a provider saw the patient in chronic care and renewed his medications, including Lyrica and Motrin. Ex. A-1: PP. 86-87.

25.

On August 7, 2020, a provider saw the patient for complaints of constipation. Ex. A-1: PP. 93-94. The provider noted that the patient had a history of dependence of laxatives and had been suing Konsyl (fiber supplements) for the past few years. The provider ordered magnesium citrate and Lactulose (laxatives) for the patient. *Id.*

26.

On October 22, 2020, a provider saw the patient in chronic care. Ex. A-1: PP. 110-12. The patient reported pain radiating down his left leg and in his thoracic spine. He reported no gastrointestinal complaints. *Id.* The provider requested Tramadol (a narcotic-like pain medication) for the patient. *Id.* at 108-09.

27.

On February 3, 2021, a provider saw the patient, who requested Motrin in place of Tramadol as he reported that it worked better. Ex. A-1: PP. 124-26. The patient reported no gastrointestinal complaints. The provider discontinued Tramadol and prescribed Motrin. *Id.* He also requested ThermaCare (a pain relieving cream) for the patient. *Id.*

28.

On March 11, 2021, a provider saw the patient, who reported pain that radiated to his left leg and numbness in the left leg. Ex. A-1: PP. 129-30. The patient reported no gastrointestinal complaints. The provider requested a surgical evaluation for the patient and noted that the patient had tried Lyrica, Tramadol, and Baclofen (a muscle relaxer) without relief. *Id.* at 127-28. The provider noted that the patient reported that the pain radiated to his left leg and caused numbness in his right leg and that he walked with a cane due to back discomfort. *Id.* I approved the request

on that day. *Id*. at 642-43. I approved the request at this time because the provider noted that conservative measures were unsuccessful at relieving the patient's reported pain.

29.

On April 5, 2021, Dr. Kavic evaluated the patient for his recurrent lumbar hernia. Ex. A-1: PP. 653-55. The patient reported a similar history; namely, that the pain was dull, of moderate intensity, well-localized, non-radiating, and associated with abdominal strain. The patient reported back pain and a gait problem. He denied abdominal pain, constipation, nausea, and vomiting. Upon examination, the patient did not appear to be in acute distress. Dr. Kavic noted a right lumbar hernia and recommended open repair of the hernia. *Id*.

30.

On April 6, 2021, a provider requested operative repair of the patient's lumbar hernia. Ex. A-1: PP. 141-42. The request was approved. *Id*. at 645-46.

31.

In a pre-operative physical examination on May 7, 2021, the patient reported that he was able to walk two times around a baseball field without shortness of breath. Ex. A-1: P. 159.

32.

On May 20, 2021, the patient underwent an open repair of his lumbar hernia. Ex. A-1: PP. 663-64. Upon his return to the facility, the patient refused to stay in the infirmary and went back to his housing unit. *Id*. at 179-80.

33.

On June 2, 2021, a provider saw the patient in follow up. Ex. A-1: PP. 184-85. The patient reported that he was doing fine and his pain was controlled. *Id*. The provider requested a post-operative visit. *Id*. at 182-83. The request was approved. *Id*. at 648-50.

34.

On June 21, 2021, the patient returned from a post-operative visit and stated that he was told that he was doing well and to gradually increase activity. Ex. A-1: PP. 188-89.

35.

On June 30, 2021, a provider saw the patient, who reported that he was doing fine and his pain was controlled. Ex. A-1: PP. 193-94. The patient asked to stop Baclofen, and the provider cut the patient's Baclofen dosage. *Id*.

36.

On August 18, 2021, a provider saw the patient, who reported that his back pain was not well-controlled and that his pain was the same as before. Ex. A-1: PP. 197-99. The patient stated that he took Baclofen and Lyrica as scheduled for pain. The provider reduced the patient's ibuprofen dosage and cautioned him to take it only for severe pain. He prescribed Tylenol and Biofreeze (a topical pain medication), and renewed Lyrica and Baclofen. *Id*. The patient's continued complaints of unchanged back pain are an indication that his complaints did not arise from his lumbar hernia. As set forth above, the patient has received appropriate treatment, including multiple medications, for his complaints of lumbar pain.

37.

My decisions regarding the patient's medical treatment were based on my medical judgment. The patient has been provided appropriate medical treatment for his lumbar hernia complaints. The patient was not denied necessary medical treatment for any medical concerns or symptoms. The care the patient received was within the standard of care exercised by like providers in similar circumstances. The care the patient received did not cause him any injury or harm. The patient was not harmed by a perceived delay in care.

The above statements are true and based upon my personal knowledge and expertise to which I am competent to testify at trial. I declare, certify, verify and state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

11/3/2021
DATE

Dr. Vivien Dorsey

10
916773v.1